*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. A. S. LINDSEY, Minor.

UNPUBLISHED
March 12, 2026
9:59 AM

No. 376517
Genesee Circuit Court
Family Division
LC No. 22-138288-NA

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child at the initial dispositional hearing, pursuant to MCL 722.638(1)(a)(*ii*) (parent has abused a sibling of the child including criminal sexual conduct). We affirm.

## I. FACTS

In July 2022, the Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights at the initial dispositional hearing, alleging that in July 2021, respondent digitally penetrated the child's older, maternal half-sibling, MR, while she was asleep. The petition further alleged that: (1) respondent had been physically violent toward MR and the children's mother, (2) respondent had recently tried to kill himself twice, and (3) in September 2021, an incident occurred resulting in respondent barricading himself in his house with a firearm while his family hid in a pole barn until police could safely evacuate them. In September 2022, the trial court authorized the petition and removed the child from respondent's care, placing the child with her mother who was not a party in this case. Respondent pleaded no contest to certain allegations in the petition, but he denied all allegations of sexual abuse.

Thereafter, the proceedings were adjourned multiple times to allow for respondent's criminal case, concerning MR's sexual abuse allegations, to reach resolution. In his criminal case, respondent eventually pleaded: (1) no contest to aggravated assault, and (2) guilty to witness intimidation for texting the children's mother in an attempt to get MR to recant her disclosure.

At the termination trial, MR testified that in July 2021, when she was 13 years old, respondent sexually assaulted her by digitally penetrating her vagina while she was asleep. MR explained that she disclosed the assault to her cousin several months later because she was too scared to tell her mother or the police. MR admitted that she attempted suicide in November 2021, because her "home life was not the best . . . ." MR also testified that respondent had been physically violent toward her and her mother.

The children's mother testified that respondent had engaged in domestic violence against her and had abused animals in the house. The children's mother also testified about the September 2021 incident, explaining that she and respondent had been arguing about the fact that MR wanted to go to homecoming with a boy that respondent did not approve of. She explained that the incident escalated when respondent pushed her onto the bed, retrieved a firearm from the bedroom closet, accidentally fired the firearm while the child was in the room, pointed the firearm at himself, and told the children's mother to shoot him. MR, the child, and their mother ran to a pole barn where they hid until police could safely evacuate them. The children also both testified about this incident, and the child specifically testified that she did not want to see respondent because she did not feel safe with him.

Respondent testified on his own behalf, denying MR's allegations of sexual abuse. Respondent stated that he would do "anything" to have the child in his life, but he also testified that he did not believe sexual assault counseling was necessary because he did not commit sexual assault.

The trial court found that there was clear and convincing evidence that respondent sexually penetrated the child's sibling, which constituted an aggravated circumstance and allowed for termination of respondent's parental rights at the initial dispositional hearing. Having found that a statutory basis existed for terminating respondent's parental rights, and that termination was in the child's best interests, the trial court terminated respondent's parental rights. Respondent now appeals.

## II. TERMINATION OF PARENTAL RIGHTS

On appeal, respondent argues that the trial court erred by terminating his parental rights at the initial dispositional hearing. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

This issue is preserved because it was raised before, and considered by, the trial court. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review for clear error the trial court's factual determination that a respondent subjected a child to aggravated circumstances. See *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing

evidence." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review the trial court's determination for clear error. *Id.* "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id.* "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's determination for clear error. *In re Olive/Metts*, 297 Mich App at 40.

## B. AGGRAVATING CIRCUMSTANCE

DHHS must make reasonable efforts to reunify a child and parent in all cases except those involving aggravated circumstances. *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). One such aggravating circumstance is when the parent has abused the child or a sibling of the child, and the abuse included "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." MCL 722.638(1)(a)(*ii*); see MCL 712A.19a(2)(a).

For termination to occur at initial dispositional hearing, several conditions must be met, including that: (1) "the original or amended petition requested termination," (2) "the trier of fact found by a preponderance of the evidence at the adjudicative hearing that the child came within the jurisdiction of the court," and (3) the court finds by clear and convincing legally admissible evidence that a statutory ground for termination is established, unless there is clear and convincing evidence that termination of parental rights is not in the child's best interests. *In re AMAC*, 269 Mich App 533, 537-538; 711 NW2d 426 (2006).

In this case: (1) the DHHS requested termination of respondent's parental rights in its petition; (2) the court accepted respondent's plea as a basis for jurisdiction; (3) the court found that there was clear and convincing evidence that respondent sexually penetrated the child's half-sibling, pursuant to MCL 722.638(1)(a)(*ii*), MCL 712A.19b(3)(b)(*i*), and MCL 722A.19b(3)(k)(*ii*); and (4) the court found that termination of respondent's parental rights was in the child's best interests. See *In re AMAC*, 269 Mich App at 537-538. For the reasons discussed next, the trial court did not clearly err by making these findings or by terminating respondent's parental rights at the initial dispositional hearing.

## C. STATUTORY GROUNDS

In this case, the DHHS's petition requested termination under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical or sexual abuse to child or sibling), MCL 712A.19b(3)(b)(*iii*) (nonparent adult's act caused physical injury or physical or sexual abuse),[1] MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent), and MCL 712A.19b(3)(k)(*ii*) (parent abused child or sibling and abuse included criminal sexual conduct

---

[1] MR was initially included in the petition, but she was later removed because respondent did not have parental rights to her. It does not appear that the DHHS reconsidered the statutory grounds after her removal, and the trial court did not specify which statutory grounds it terminated respondent's parental rights under, but we posit that when MCL 712A.19b(3)(b)(*iii*) was initially included in the petition, it was applicable to MR.

involving penetration, attempted penetration, or assault with intent to penetrate). The trial court did not specifically state which grounds it terminated respondent's parental rights under, but it noted that regardless of whether termination was proper under MCL 712A.19b(3)(b)(*i*) or (k)(*ii*), the crux of the issue was whether there was clear and convincing evidence that respondent committed criminal sexual conduct involving penetration of MR. If we conclude that the trial court did not clearly err by finding that one statutory ground for termination existed, then we do not need to address the additional grounds for termination. *In re HRC*, 286 Mich App at 461.

We conclude that the trial court did not clearly err by finding that there was clear and convincing evidence that respondent sexually abused MR through digital penetration. At the termination hearing, MR testified that respondent sexually assaulted her by digitally penetrating her vagina while she was asleep. She explained that respondent had been rubbing her back when she fell asleep, and when she awoke, his fingers were inside her vagina, and her shorts were around her ankles. As the trial court noted, MR's testimony at the termination hearing was consistent with her testimony at respondent's preliminary examination. The Children's Protective Services (CPS) specialist, who was qualified as an expert, testified that the way MR disclosed the assault—through a peer—was a fairly typical way that children disclose sexual abuse. Moreover, the specialist also testified that self-harm was a possible response to sexual abuse, and MR had testified that she attempted suicide some months after the assault occurred.

Although respondent denied sexually assaulting MR and presented portions of MR's preliminary examination testimony in which she seemed to suggest that she would be willing to lie to CPS and that she had disclosed the abuse to her cousin because she was mad at respondent, that evidence went to MR's credibility as a witness. And as previously stated, "[w]e give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App at 459. Additionally, respondent's effort to pressure MR into recanting—as seen in his text messages to the children's mother, for which respondent pleaded guilty to witness intimidation in his criminal case—suggests a consciousness of guilt regarding the assault. See *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010) ("Evidence that a defendant made efforts to influence an adverse witness is relevant if it shows consciousness of guilt"). Accordingly, we are not left with a definite and firm conviction that the trial court clearly erred by finding that respondent sexually penetrated the child's sibling, pursuant to MCL 722.638(1)(a)(*ii*), MCL 722A.19b(3)(b)(*i*) and MCL 722A.19b(3)(k)(*ii*). See *In re Fried*, 266 Mich App at 541.

Both MCL 722A.19b(3)(b)(*i*) and MCL 722A.19b(3)(k)(*ii*) also require a finding that the child faces a "reasonable likelihood" of harm if returned to the parent. The trial court stated that respondent's abuse of MR could be used to evaluate respondent's risk to the daughter under the doctrine of anticipatory neglect. We agree. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). The doctrine is applicable even if the respondent is not the biological parent of the abused child, especially when the respondent had been raising the victim as if they were their child. *Id.* Although respondent was not MR's biological father, he had lived with her from the time that she was five, and he acted as a parent to her. Therefore, the trial court did not clearly err by finding that respondent posed a risk to the child under the doctrine of anticipatory neglect. See *id.*

Accordingly, the trial court's findings pursuant to MCL 722A.19b(3)(b)(*i*) and MCL 722A.19b(3)(k)(*ii*) were not clearly erroneous, and the trial court did not err by terminating respondent's rights on that basis. Given this conclusion, we need not address the remaining statutory grounds relied upon in this case. See *In re HRC*, 286 Mich App at 461.

## D. BEST INTERESTS

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). At the best-interest stage of the proceeding, the trial court's focus is on the child, not the parent. *In re Moss*, 301 Mich App at 87.

The trial court adequately considered the relevant best-interests factors in this case, and it did not err by finding that termination of respondent's parental rights was in the child's best interests.

At the termination hearing, the child testified that respondent had touched her sister, hurt her animals, tried to hurt her mother, and pulled a gun on himself in front of her. Accordingly, the child stated that she did not feel safe with respondent and that she did not want to see him. Similarly, MR testified that respondent sexually assaulted her and was physically violent with her and her mother. And the children's mother testified that respondent had engaged in domestic violence against her, abused animals in the house, and negligently fired a firearm in front of the child; the child testified to the same events and stated that the firearm incident deeply frightened her. This dangerous behavior weighed in favor of termination as did the child's need for permanence, stability, and finality. Although respondent testified that he had stopped drinking alcohol and started therapy,[2] respondent's minimization of the September 2021 incident, lack of accountability regarding MR's sexual assault allegations, witness intimidation conviction, and belief that sexual assault counseling was unnecessary demonstrated respondent's lack of parenting ability. Indeed, defendant threatened to stop financially supporting the children's mother, removed a vehicle from her, and made other statements indicating his use of money to exert power and control over the family. He also demanded that MR's phone be completely wiped and returned to factory settings; he alleged that this demand had nothing to do with the case, instead stating that he was paying for a phone that MR did not "deserve." Clearly, the evidence supported the trial court's conclusion that termination was in the child's best interest.

Accordingly, the trial court considered a variety of factors, properly focused on best interests from the child's perspective, and did not clearly err by finding that termination of

---

[2] Notably, defendant refused to provide CPS or DHHS with the name or contact information of his therapist so they could confirm that he was receiving appropriate therapy.

respondent's parental rights was in the child's best interests. See *In re White*, 303 Mich App at 714; *In re Moss*, 301 Mich App at 87; *In re Olive/Metts,* 297 Mich App at 41-42.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney